UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIZETH LYTLE, individually
and on behalf of all others
similarly situated who consent
to their inclusion in a
collective action,

      Plaintiff,

v.                    Case No. 8:12-cv-1848-T-33TBM

LOWE'S HOME CENTERS, INC.,
ET AL.,

      Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Defendants Lowe's Home Centers, Inc.; Lowe's Companies, Inc.; Lowe's HIW, Inc.; and the Administrative Committee of Lowe's Companies, Inc.'s Motion to Dismiss with Prejudice Counts II Through IV of the Third Amended Complaint (Doc. # 362), filed on February 18, 2014. Plaintiff Lizeth Lytle filed a response in opposition to the Motion on March 4, 2014. (Doc. # 387). Thereafter, with leave of Court, Defendants filed a reply in support of the Motion on March 17, 2014. (Doc. # 394). For the reasons that follow, the Court grants Defendants' Motion to the extent that Counts II and III are dismissed with

prejudice and Count IV is dismissed without prejudice as set forth herein.

## I.   <u>Background</u>

Defendants operate more than 1,750 home improvement retail stores nationwide. (Doc. # 350 at ¶ 25). According to the Third Amended Complaint, all stores are uniform in management, training, and employee policies and procedures, and the stores are mirror images of each other. (<u>Id.</u> at ¶¶ 26-27). Further, all stores are supervised by territory or regional officers, including Human Resources Managers who represent the corporate office. (<u>Id.</u> at ¶ 28). Lytle worked for Defendants from June of 2006, until March of 2012, as a Human Resources Manager. (<u>Id.</u> at ¶ 38).

On August 15, 2012, Lytle filed a collective action complaint for unpaid overtime compensation, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, costs and other compensation pursuant the Fair Labor Standards Act (FLSA) (Doc. # 1), and thereafter filed an Amended Complaint (Doc. # 76) on April 15, 2013. Lytle filed a Second Amended Complaint on July 5, 2013, adding claims under the Employee Retirement Income Security Act (ERISA). (Doc. # 186). Thereafter, on January 31, 2014, following the

Court's Order granting Lytle's Motion to Add Party Defendant
to ERISA Claims (Doc. # 342), Lytle filed her Third Amended
Complaint reasserting the same FLSA and ERISA claims she pled
in her Second Amended Complaint (Doc. # 350).

### A. Count I – FLSA

In her Third Amended Complaint, Lytle asserts that
Defendants have:

> willfully and intentionally engaged in a nationwide
> pattern and practice of violating the provisions of
> the FLSA, by misclassifying Human Resources
> Managers as exempt under the FLSA overtime wage
> provision, thereby improperly failing and/or
> refusing to pay [Lytle] and the Plaintiff Class,
> comprised of all current and former similarly
> situated employees who work or have worked over
> forty (40) hours per week, overtime compensation
> pursuant to FLSA [29 U.S.C. §§ 206-207].

(Id. at ¶ 61).

On July 26, 2013, Lytle sought conditional certification
of this case as a nationwide collective action pursuant to 29
U.S.C. § 216(b), consisting of:

> All Human Resources Managers or other Human
> Resources store employees with other titles, who
> are or were employed with [Defendants], within the
> past three years preceding this lawsuit to the day
> of trial, and elect to opt-in to this action
> pursuant to FLSA 29 U.S.C. Section 216(b) who have
> worked in excess of forty (40) hours per week and
> were not paid overtime wages.

3

(Doc. # 205 at ¶ 11). On January 10, 2014, this Court conditionally certified a nationwide FLSA collective action. (Doc. # 340). Thereafter, on January 31, 2014, this Court granted the parties' Joint Motion for Approval of Notice and adopted the parties' proposed class notice and methods of dissemination. (Doc. # 349).

**B. <u>Counts II, III, and IV – ERISA</u>**

Defendants maintain a 401(k) Plan (Plan), in which Lytle and numerous members of the purported ERISA class participated in every pay period they worked. (Doc. # 350 at ¶ 74). According to Lytle, the Plan states: "All employee[s] will be enrolled automatically in the Plan (unless they affirmatively elect not to enroll) and can contribute to the Plan and receive a 100% vested company match after 180 days of service." (<u>Id.</u> at ¶ 82). Once eligible, Defendants "immediately match[ ] 3% each pay period (up to 100%) that an employee contributes, then 50% of the next 2% an employee contributes, and finally 25% of the next 1% an employee contributes." (<u>Id.</u> at ¶ 84). "Whether it is one percent, or some higher percent, all contributions are directly based on an employee's eligible compensation." (<u>Id.</u> at ¶ 85).

According to the Third Amended Complaint, the Plan's "Summary Plan Description" states in part: "Eligible

4

compensation is the total of the salary or wages, overtime premium pay, commissions, and bonuses . . . ." (Id. at ¶ 86). Lytle submits that overtime earned by a Plan participant, including Lytle, is to be considered eligible compensation under the Plan – whether the Defendants paid overtime compensation or not – because eligible compensation under the Plan is not the same as money actually paid to the participant. (Id. at ¶ 88).

Lytle brings the ERISA claims on behalf of a putative ERISA class composed of:

> All Human Resources Managers, who are or were employed by Lowe's Home Centers, Inc.; Lowe's Companies, Inc.; or Lowe's HIW, Inc., within the past six years preceding this lawsuit (i.e. August 14, 2009) to the day of case disposition, and who participated in the Lowe's 401(k) Plan during this time.

(Id. at ¶ 83).

According to Lytle, Defendants have failed to keep accurate records because both ERISA and the FLSA require strict compliance in record keeping for hours worked and benefits earned. (Id. at ¶ 93). Furthermore, Lytle contends that the Defendants have failed to credit Lytle and the potential ERISA class members with the compensation due to them under the Plan and the law. (Id. at ¶¶ 97-98). As a

result, Lytle and the prospective ERISA class members are left confused about their rights under the Plan both now and in the future. (<u>Id.</u> at ¶ 99).

In the Third Amended Complaint, Lytle alleges three counts relating to ERISA violations. Count II contends that Defendants violated the record-keeping provision of ERISA by failing to maintain adequate records. Count III posits that Defendants breached their fiduciary duties by failing to credit Plan accounts based on all of the overtime compensation Lytle and the prospective ERISA class members allegedly should have received. Furthermore, Count IV seeks to enforce Plan terms, clarify rights to future benefits under the Plan, and recover benefits for current overtime work, future overtime work, if any, and past overtime worked, which is currently unpaid but allegedly due.

Defendants filed the present Motion on February 18, 2014. (Doc. # 362). Lytle filed a response in opposition to the Motion on March 4, 2014. (Doc. # 387), and Defendants filed, with leave of Court, a reply in support of the Motion on March 17, 2014 (Doc. # 394). The Court has reviewed the Motion, the response thereto, and the reply and is otherwise fully advised in the premises.

## II.  <u>Legal Standard</u>

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

As a threshold matter, the Court notes that Defendants' Motion has not been converted into a motion for summary judgment because the Court has not considered matters outside

the pleadings. When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(d) requires that the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56. "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)(quoting Fed. R. Civ. P. 7(a) and 10(c)); see GSW, Inc. v. Long Cnty, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993)(stating that when considering a motion to dismiss, "the Court limits its consideration to the pleadings and exhibits attached thereto.").

The Eleventh Circuit has adopted the "incorporation by reference" doctrine under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. Horsley, 304 F.3d at 1134. "Undisputed" in this context means that the authenticity of the document is not challenged. Id.

Although in the Third Amended Complaint Lytle discusses the Plan in detail, she failed to attach the Plan for the

8

Court's review. However, the Defendants have attached a copy of the Plan to their Motion, and Lytle has not disputed the authenticity of the attachment. Therefore, the Court has considered the attached Plan, but has not considered any other documents in making its determination.

## III. **Analysis**

In their present Motion, Defendants seek to dismiss Counts II, III, and IV of the Third Amended Complaint as they submit these ERISA counts fail to state – and cannot state – a claim for which relief can be granted. Furthermore, Defendants contend that the "corporate Defendants" are improper parties to these ERISA claims. The Court will discuss each issue in turn beginning with whether the corporate Defendants are proper parties to the ERISA claims.

### 1. **Proper Defendants**

In the Motion, Defendants contend that the corporate Defendants – Lowe's Home Centers, Inc.; Lowe's Companies, Inc.; and Lowe's HIW, Inc. – are improper Defendants to Counts II, III, and IV of the Third Amended Complaint as none of these Defendants were acting as a plan administrator or plan fiduciary with regard to the compensation decisions underlying Lytle's ERISA claims. (Doc. # 362 at 17). Instead,

the Defendants submit that "the proper defendant is the party that controls administration of the ERISA plan in question, typically the plan administrator," which here is the Administrative Committee of Lowe's Companies, Inc. (Doc. # 362 at 16)(citing Varity Corp. v. Howe, 516 U.S. 489, 498 (1996)("In relevant part, the statute says that 'a person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan.")).

In response, however, Lytle contends that a proper party to an ERISA lawsuit is the party who controls the administration of the plan. (Doc. # 387 at 19). Thus, ERISA does not only apply to the listed plan administrator but also to whomever has "sufficient decisional control over the claim process." (Id.)(citing Garren v. John Hancock Mut. Life Ins., Co., 114 F.3d 186, 187 (11th Cir. 1997)("The proper party defendant in an action concerning ERISA benefits is the party that controls the administration of the plan."). According to Lytle, "the operative Complaint makes clear that the Defendants in this action are proper parties to Plaintiff's

ERISA [claims]." (Doc. # 387 at 19). Specifically, the Third
Amended Complaint "expressly allege[s] that [Defendants] are
proper parties due to their 'discretionary authority,
responsibility and/or control with respect to crediting
compensation' and their alleged actual exercise of this
control." (Id.).

Lytle correctly notes that the proper party defendant in
an action concerning ERISA benefits is the party that controls
administration of the plan. Garren, 114 F.3d at 187. In this
case, the Administrative Committee of Lowe's Corporation,
Inc. is the listed plan administrator of the ERISA plan at
issue. (Doc. # 350 at ¶ 19). The parties agree that the
Administrative Committee of Lowe's Corporation, Inc. is a
proper defendant. See Rosen v. TSW, Inc., 979 F.2d 191, 193-
94 (11th Cir. 1992) (agreeing with the reasoning of the First
Circuit that if a company is administering the plan, then it
can be held liable for ERISA violations, regardless of the
provisions of the plan document). However, disagreement
arises amongst the parties as to whether the corporate
Defendants are proper defendants to the ERISA claims.

According to the Third Amended Complaint, the corporate
Defendants "have exercised actual discretionary authority,
responsibility, and/or control in determining what

11

compensation would and would not be credited under the Plan."
(Doc. # 350 at ¶ 123). Therefore, taking the allegations in
the Third Amended Complaint as true for the purpose of the
present analysis only, the Court finds that the corporate
Defendants exercised sufficient control over the
administration of the Plan, and are thus proper parties to
the ERISA claims in this action.

### 2. Count II

In Count II of the Third Amended Complaint, Lytle
contends that Defendants failed to maintain accurate records
of the hours worked by Lytle and the members of the
prospective ERISA Class in violation of ERISA section
209(a)(1), 29 U.S.C. § 1059(a)(1).

### a. Failure to Maintain Records

Pursuant to the Third Amended Complaint, contributions
to the participants' Plan account are based on a percentage
of the participants' "eligible compensation." (Doc. # 350 at
¶ 85). Lytle submits that the Plan's "Summary Plan
Description" states in part: "Eligible compensation is the
total of the salary or wages, overtime premium pay,
commissions, and bonuses . . . ." (Id. at ¶ 86).

Furthermore, as stated in Section 4 of the Plan,

Section 4 Contributions

(a)     Salary Deferral Contributions. Subject to the
        limitations described in this Section 4(a) and
        in Sections 4(e) and 4(g), an Employee who is
        eligible to participate in the Plan may elect
        to have from 1% to 50% . . . of his Deferral
        Compensation    withheld    by    Lowe's    and
        contributed to the Trust on his behalf in lieu
        of his receiving such amount as compensation.

(Doc. # 362-1 at 15). "Compensation" is defined as:

    The total remuneration paid to an Employee by
    Lowe's in each Plan Year, as reportable on IRS Form
    W-2, including the amount (if any) of (i) Salary
    Deferral Contributions made on his behalf for the
    Plan Year, (ii) salary reductions under the Lowe's
    Companies  Flexible  Benefit  Plan  (pursuant  to
    Section  125  of  the  Code),  and  (iii)  elective
    amounts that are not includible in the gross income
    of the Employee under Section 132(f), 402(e)(3),
    402(h)  or  403(b)  of  the  Code,  but  excluding
    reimbursements or other expense allowances, fringe
    benefits   (cash   or   noncash),   moving   expenses,
    deferred compensation and welfare benefits and any
    amount in excess of $255,000 (as adjusted after
    2013 for increases in the cost of living pursuant
    to Section 401(a)(17) of the Code).

(Id. at 7). "Deferral Compensation" is defined as:

    The salary or wages, overtime premium pay, bonuses
    and commissions paid to a Participant during a
    payroll period but excluding any amount in excess
    of $255,000 (as adjusted after 2013 for increases
    in the cost of living pursuant to Code Section
    401(a)(17)).   Deferral Compensation shall include
    compensation paid after a Participant separates
    from  service  but  only  to  the  extent  such
    compensation would have been Deferral Compensation

13

> if paid prior to such separation from service and
> only if paid prior to the first pay period that
> begins 30 days after such separation from service.

(<u>Id.</u>).

Lytle contends that Defendants failed to account for all hours worked, including overtime hours, by Lytle and the potential ERISA class members. (Doc. # 350 at ¶ 117). As a result, Defendants failed to maintain adequate records sufficient for Lytle and the prospective ERISA class members to determine their benefit accrual rights under the Plan. (<u>Id.</u>).

However, Defendants contend that according to the Plan, Defendants were only required to maintain records for compensation actually paid to employees, which they did, not the number of hours an individual worked, and therefore, Defendants were in compliance with the Plan terms. (Doc. # 363 at 9).

This Court finds that under the relevant Plan, it is the "eligible compensation" - salary, wages, overtime premium pay, bonuses, and commissions - actually **paid** to employees, rather than the number of hours worked, which is relevant to allocating contributions. Thus, under the Plan, records of hours worked are not records which are necessary to determine

the benefits due to employees within the meaning of section 209(a)(1). See Henderson v. UPMC, 640 F.3d 524, 529 (3rd Cir. 2011) (detailing a plethora of cases finding that, where plan language defined compensation as "amounts paid by an Employer to an Employee" or in similar terms, employer had no obligation under ERISA to record amounts earned or hours worked). Instead, the number of hours worked is only relevant to determine whether an employee was correctly classified as exempt or non-exempt for purposes of receiving overtime compensation.

Thus, because the Plan at issue here determines benefits based on compensation actually paid to employees rather than the number of hours worked, any alleged failure by Defendants to maintain adequate records of hours worked does not constitute an ERISA record-keeping violation.

### b. **Private Right of Action**

Even if this Court found that Defendants failed to maintain adequate records, Defendants further contend that Count II should be dismissed as there is no private right of action for failure to maintain records. (Doc. # 362 at 8). According to Defendants, "the basis for the requirement that an employer maintain records with respect to each of its employees sufficient to determine the benefits due or which

may become due to such employees, does not provide a private right of action to enforce ERISA record-keeping violations." (Id.)(citing <u>Lowe v. Telesat Cablevision, Inc.</u>, 837 F. Supp. 410, 412 (M.D. Fla. 1993)(finding that 29 U.S.C. § 1059(a)(1) does not provide a private right of action, but calls for a civil penalty to be paid to the Secretary of Labor). "This is because Section 209(b) provides that an employer who fails to comply with the record-keeping requirements shall pay a penalty to the Secretary of Labor, thereby affording the remedy of a civil penalty to be paid to the Secretary, not creating a private right of action." (Doc. # 362 at 8-9).

29 U.S.C. § 1059(a)(1) states in pertinent part:

(a)(1) Except as provided by paragraph (2) every employer shall, in accordance with such regulations as the Secretary may prescribe, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees.

* * *

(b) If any person who is required, under subsection (a) of this section, to furnish information or maintain records for any plan year fails to comply with such requirement, he shall pay to the Secretary a civil penalty of $10 for each employee with respect to whom such failure occurs, unless it is shown that such failure is due to reasonable cause.

29 U.S.C. § 1059(a)(1), (b).

According to the plain language of the above referenced provisions, Defendants have a duty to keep records sufficient to accurately determine what benefits are due or may be due to plan participants. However, this section does not provide a private right or cause of action; rather, Congress has provided for a civil penalty payable, upon the finding of a violation, to the Secretary of Labor. See Lowe, 837 F. Supp. at 412; Premick v. Dick's Sporting Goods, Inc., No. 2:06-cv-530, 2007 WL 141913, at *6 (W.D. Pa. Jan. 18, 2007)(determining that 29 U.S.C. § 1059(a)(1) does not provide plaintiff with a private cause of action); Winfield v. Citibank, 842 F. Supp. 2d 560, 565-66 (S.D.N.Y. 2012)(interpreting 29 U.S.C. § 1059(a)(1) to mean that section 209(a)(1) does not create a private right of action but instead affords the remedy of a civil penalty to be paid to the Secretary of Labor).

Upon review of Lytle's response in opposition to the Motion, Lytle does not contest Defendants' position regarding whether the relevant statute creates a private right of action. Rather, Lytle submits that Defendants had a duty to maintain adequate records, and therefore, she has a right to sue under section 502(a)(3), 29 U.S.C. § 1132(a)(3), ERISA's "catch all" provision.

### c. **ERISA Section 502(a)(3)**

Section 502(a)(3) authorizes a civil action:

> by a participant, beneficiary, or fiduciary (A) to
> enjoin any act or practice which violates . . .
> the terms of the plan, or (B) to obtain other
> appropriate equitable relief (i) to redress such
> violations or (ii) to enforce any provisions of .
> . . the terms of the plan.

29 U.S.C. § 1132(a)(3).

The Supreme Court has emphasized that section 502(a)(3) is a "catchall" provision that provides relief only for injuries that are not otherwise adequately provided for by ERISA. Varity, 516 U.S. at 504-14 (explaining that section 502(a)(3) "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that section 502 does not elsewhere adequately remedy."). "Where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would not be appropriate." Ogden v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284, 1287 (11th Cir. 2003)(quoting Varity, 516 U.S. at 515).

The Eleventh Circuit explained in Katz v. Comprehensive Plan of Group Insurance, that an ERISA plaintiff who has an adequate remedy under ERISA section 502(a)(1)(b) cannot

alternatively plead and proceed under section 502(a)(3). 197 F.3d 1084, 1088-89 (11th Cir. 1999); Cheal v. Life Ins. Co. of N. Am., 330 F. Supp. 2d 1347, 1356 (N.D. Ga. July 28, 2004)(finding that plaintiff was precluded from stating an alternative basis for relief under section 502(a)(3)). The Eleventh Circuit also recognized that an ERISA plaintiff that had an adequate remedy under section 502(a)(1)(B) cannot assert a section 502(a)(3) claim after his section 502(a)(1)(B) claim has been lost. Ogden, 348 F.3d at 1287 (citing Katz, 197 F.3d at 1089).

In order for this Court to determine whether Lytle has stated a claim under section 502(a)(3), the Court must first determine whether Lytle's claim is an equitable claim cognizable under section 502(a)(3). Under section 502(a)(3), "equitable relief" refers to "those categories of relief that were typically available in equity." Cheal, 330 F. Supp. 2d at 1347. However, even where an ERISA plaintiff frames the relief requested as "steeped in equity," the court must look past the label - the determination of whether a particular remedy "is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." Cook v. Campbell, 485 F. Supp. 2d 1341, 1358 (M.D. Ala. 2007)(citing Great-West Life & Annuity Ins. Co. v.

<u>Knudson</u>, 534 U.S. 204, 213 (2002)). Then, after the Court makes that determination, the Court must examine whether this claim is precluded by Lytle's claim for benefits under section 502(a)(1)(B).

In light of the foregoing principles, the Court turns to an examination of the Third Amended Complaint to determine the basis of Lytle's claim and the nature of the relief sought. Upon review, the Court notes that in addition to seeking injunctive relief to remedy the Defendants' alleged record keeping failure, Lytle also requests that this Court credit Lytle and the prospective ERISA class members with eligible compensation and pensionable pay for all of their past, present, and future uncompensated overtime work. (Doc. # 350 at 23). Even though Lytle strategically attempts to characterize Count II as a section 502(a)(3) claim for equitable relief, this Court finds that she in fact seeks an Order from this Court directing Defendants to provide monetary relief. See <u>Mertens v. Hewitt Assoc.</u>, 508 U.S. 248, 255 (1993)("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages – monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties."); <u>Knudson</u>, 534 U.S. at 209 (holding that the plaintiff could

20

not recover under section 502(a)(3) because even though the plaintiff characterized her claim as an equitable claim, it was actually a legal claim because the plaintiff did not seek to recover from a particular fund or property in the defendant's possession but rather to impose personal liability on defendants); DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 537 (E.D.N.Y. 2011) (finding that although plaintiffs have attempted to cast their claim as one seeking equitable relief under the "catch-all" provision of ERISA, plaintiffs' claim is inextricably intertwined with the benefits that they will receive under the plan and, as such, should be construed as plan-based claim seeking monetary damages).

As will be discussed, section 502(a)(1)(B) authorizes a participant to bring a civil action to recover benefits due under the terms of the plan, to enforce rights under the terms of the plan, and to clarify rights to future benefits under the terms of the plan. This is precisely what Lytle is requesting this Court do in Count II – clarify her rights as to record maintenance and clarify what benefits are due to her for her current overtime work, her future overtime work, if any, and her past overtime work, which currently is unpaid but allegedly due. Therefore, The Court finds that section

502(a)(1)(B) would provide an adequate remedy to Lytle for the relief she seeks, and accordingly, the Court finds that bringing Count II under the guise of section 502(a)(3) is inappropriate.

In making its determination, the Court acknowledges Lytle's argument that sections 502(a)(3) and 502(a)(1)(B) are often pled together because the litigants and the court do not yet know what remedies or causes of action will result and because the court can always dispose of it at a later stage once more information is known. (Doc. # 387 at 8)(citing Geiger v. UNUM Life Ins. Co. of Am., 213 F. Supp. 2d 813 (N.D. Ohio 2002)(concluding that at the pleadings stage, a plaintiff may simultaneously assert alternative claims for recovery of benefits under § 1132(a)(1)(B) and for breach of fiduciary duty under § 1132(a)(3)). However, the Court notes that Geiger is "no longer good law" due to subsequent Sixth Circuit decisions. DeWald v. UNUM Provident Corp., No. 1:05-cv-135, 2005 WL 1126742, at *3 (N.D. Ohio Apr. 18, 2005); see Julia v. Bridgestone/Firestone, Inc., 101 F. App'x. 27, 29 (6th Cir. 2004)(finding that the "district court correctly noted that a plaintiff who has standing to pursue a claim for recovery of benefits under 29 U.S.C § 1132(a)(1)(B) cannot pursue a claim for equitable relief under § 1132(a)(3), which

instead operates as a catchall for plaintiffs not otherwise provided for under § 1132."). Therefore, Lytle has not provided this Court with any binding authority illustrating it position that it is entitled to plead sections 502(a)(3) and 502(a)(1)(B) together at this stage of the proceedings.

As the Court finds that Lytle can obtain the relief she and the putative ERISA class members seek under section 502(a)(1)(b), the Court finds that Lytle's cause of action under section 502(a)(3) is precluded by Lytle's claim for benefits under section 502(a)(1)(B). Therefore, to the extent Lytle seeks relief under Count II pursuant to section 502(a)(3), this Court grants Defendants' Motion, and as a result, Count II is dismissed with prejudice.

### 3. Count III

In Count III, Lytle submits that Defendants breached their fiduciary duties by failing to credit compensation as required by ERISA, in violation of ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), which requires:

(a)  Prudent man standard of care

(1)  Subject to sections 1103(c) and (d), 1342, and
     1344 of this title, a fiduciary shall
     discharge his duties with respect to a plan
     solely in the interest of the participants and
     beneficiaries and —

(A)  for the exclusive purpose of:

    (i)    providing benefits to participants and their beneficiaries; and

    (ii)    defraying reasonable expenses of administering the plan;

(B)  with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C)  by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D)  in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1).

According to Lytle, Defendants breached their fiduciary duties by failing to credit compensation due for overtime performed by Lytle and the members of the prospective ERISA class as eligible compensation under the Plan. (Doc. # 350 at ¶ 134).

In Zipp v. World Mortgage Company, et al., 632 F. Supp. 2d 1117 (M.D. Fla. 2009), the court faced a similar argument. In Zipp, the plaintiff asserted violations under the FLSA as well as ERISA. Id. at 1118. In his two ERISA counts, the plaintiff alleged that defendants 1) failed to maintain records with respect to each of their employees sufficient to determine the benefit accrual rights of pension plan participants and 2) breached fiduciary duties by failing to credit compensation due for overtime. Id. at 1119.

After considering the case law presented by both parties, the Court considered the defendants' position "better-reasoned," and found that "[t]he business decision whether to classify employees as 'exempt' or 'nonexempt' for FLSA overtime purposes may have an impact on the ERISA plan, but that does not render the claims based on that classification decision ERISA claims." Id. at 1124. In making its determination, the Zipp court cited to LePage v. Blue Cross & Blue Shield of Minnesota, Civ. No. 08-584 (RHK/JSM), 2008 WL 2570815, at *5-6 (D. Minn. June 25, 2008):

> Setting compensation levels is a business decision or judgment made in connection with the on-going operation of a business. Consequently, ERISA does not govern Blue Cross's business decision about how to classify an employee for payroll and FLSA purposes. Nor do Plaintiffs dispute this. Instead, they make the very fine distinction that Blue

25

> Cross, as plan administrator, has a fiduciary duty
> to double-check this business decision and evaluate
> whether employees had some legal claim to
> additional compensation. But no such duty exists[.]
> An employer's discretion in determining salaries is
> a business judgment which does not involve the
> administration of an ERISA plan or the investment
> of an ERISA plan's asserts. Such a decision may
> ultimately affect a plan indirectly but it does not
> implicate fiduciary concerns regarding plan
> administration or assets. Business decisions can
> still be made for business reasons, notwithstanding
> their collateral effect on prospective, contingent
> employee benefits. ERISA clearly states that a
> fiduciary must discharge its duties "in accordance
> with the documents and instruments governing the
> plan. . . ." Thus, Blue Cross, as plan
> administrator, has a fiduciary duty to credit
> Plaintiffs with the compensation that is required
> to be credited under the terms of the plan.

Zipp, 632 F. Supp. 2d at 1122-23 (citing LePage, 2008 WL

2570815, at *5-6); see also Winfield, 842 F. Supp. 2d at 571

(quoting De Silva, 770 F. Supp. 2d at 541)("[W]here an ERISA

plan defines benefits in terms of compensation, and where

compensation is tied to wages actually paid, employers are

not obligated to credit employees for 'all hours worked,' and

thus, the failure to credit those hours does not constitute

a breach of fiduciary duty under ERISA."); Henderson, 640

F.3d at 530 (affirming dismissal of breach of fiduciary duty

claim for failure to credit overtime hours worked where number

of hours worked was not relevant to calculation of benefits

under the plan); Kuznyetsov v. W. Penn Allegheny Health Sys.,

Inc._, No. Civ. A. 9-379, 2010 WL 597475, at *7 (W.D. Pa. Feb. 16, 2010)(dismissing breach of fiduciary duty claim on same grounds).

Here, Lytle does not allege that Defendants failed to keep records as required by ERISA; instead, Lytle argues in essence that the records that were kept are incorrect due to the Defendants' classification decision. Again, that underlying decision is an employment decision, not an ERISA plan decision. Accordingly, Defendants were not acting in the capacity of an ERISA fiduciary when making this employment decision.

Rather, as ERISA fiduciaries, Defendants were required to discharge their duties in accordance with the documents and instruments governing the Plan. This Court has already found that under the relevant Plan, it is the "eligible compensation" - salary, wages, overtime premium pay, bonuses, and commissions - actually **paid** to employees, rather than the number of hours worked, which is relevant to allocating contributions. The records of hours worked are not records which are necessary to determine the benefits due to employees within the meaning of section 209(a)(1). Accordingly, as Defendants maintain records of the compensation actually paid to their employees, there is no breach of fiduciary duty on

behalf of Defendants. Therefore, Count III cannot state a claim for breach of fiduciary duty under ERISA as a matter of law.

Nonetheless, even if Count III did state a claim for breach of fiduciary duty, this Court finds that Lytle could not obtain relief under section 502(a)(3) as desired. As previously stated, section 502(a)(3) is a "catchall" provision that provides equitable relief for injuries that are not otherwise adequately provided for by ERISA. Varity, 516 U.S. at 504-14. In Count III, Lytle seeks an injunction requiring Defendants to credit all members of the prospective ERISA class with compensation under the Plan for all of the past and future overtime work performed by those class members and any such other equitable relief this Court finds proper. (Doc. # 350 at ¶ 125).

However, careful scrutinization of Count III reveals that the relief Lytle ultimately seeks is an Order awarding monetary relief. Accordingly, her claims asserted pursuant to section 502(a)(3) – the "catchall" provision – are barred. In addition, as discussed below, the Court is without the power to afford Lytle relief under section 502(a)(1)(b) due to her failure to exhaust the administrative remedies available to

her under the Plan. As a result, relief under section 502(a)(1)(B) is likewise unavailable to Lytle at this time.

For the reasons stated above, to the extent Lytle seeks relief under Count III pursuant to section 502(a)(3), this Court grants Defendants' Motion. Accordingly, Count III of the Third Amended Complaint is dismissed with prejudice.

### 4. Count IV

In Count IV, Lytle seeks to enforce the Plan terms, clarify rights to future benefits under the Plan terms, and recover benefits due under the Plan pursuant to section 502(a)(1)(B). Specifically, Lytle seeks to clarify what amount of benefits are due to her and the prospective ERISA class for their current overtime work, their future overtime work, if any, and their past performed overtime work, which is currently unpaid, but allegedly due, and therefore not being contributed by the Defendants into the 401(k) they are earning. (Doc. # 350 at 130). Lytle also seeks clarification related to her rights as to accounting and record maintenance Defendants are obligated to keep. (Id.). Finally, Lytle seeks to enforce her rights under the Plan by seeking a judgment:

> to order the Defendants to comply with ERISA and
> the Plan terms[,] to update the records with proper
> accounting and maintenance[,] and to have the
> Defendants contribute any amounts due to them under

> the law, which were earned but have not yet been
> contributed by the Defendants, and by seeking to
> recover any of those benefits lost due [to] the
> misclassification of the Human Resource Manager
> positions.

(Id.).

ERISA section 502(a)(1)(B) authorizes a participant or beneficiary to bring a civil action to recover benefits due under the terms of the plan, to enforce rights under the terms of the plan, and to clarify rights to future benefits under the terms of the plan, which is what Lytle and the prospective ERISA class seek. See 29 U.S.C. § 1132 (a)(1)(B). The Eleventh Circuit has specifically held that exhaustion of administrative remedies is a prerequisite to instituting an ERISA action in a federal district court. Mason v. Cont'l Grp., Inc., 763 F.2d 1219, 1221 (11th Cir. 1985), cert. denied, 474 U.S. 1087 (1986). Exhaustion of administrative remedies is not required (1) where it would prove futile; (2) where the claimant was wrongfully denied access to the review procedures; (3) where irreparable harm would result by requiring exhaustion; (4) where administrative remedies are inadequate; or (5) where the issue involves statutory interpretation. Nierenberg v. Heart Ctr. of SW. Fla., P.A., 835 F. Supp. 1404, 1407 (M.D. Fla. 1993). In light of such

exceptions, "the decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the district court has clearly abused its discretion." Springer v. Wal-Mart Assocs. Grp. Health Plan, 908 F.2d 897, 899 (11th Cir. 1990)(quoting Curry v. Contract Fabricators Inc. Profit Sharing Plan, 891 F.2d 842, 846 (11th Cir. 1990)).

Lytle contends that there is no administrative procedure available to her or the prospective ERISA class members that would grant the relief the individuals seek, and therefore, it can be reasonably assumed that the Plan's terms do not require Lytle or the prospective ERISA class members to exhaust any administrative remedies. (Doc. # 387 at 17). To support this contention, Lytle cites to Watts v. BellSouth Telecomms., Inc., 316 F.3d 1203, 1207-08 (11th Cir. 2003). In Watts, the Eleventh Circuit stated that the administrative exhaustion requirement is not found in the ERISA statute itself; it is a court-imposed, policy-based requirement. Id. at 1207. Therefore, the court found that a claim should not be barred by the administrative exhaustion requirement if the reason the claimant failed to exhaust the administrative remedies is that she reasonably believed that she was not required to exhaust her administrative remedies before filing

31

a lawsuit. Id. The reasonableness of the claimant's belief "must be judged from the perspective of the average plan participant." Id.

After considering the relevant documents, the court in Watts determined that the documents failed to adequately explain that exhausting administrative remedies – namely the administrative appeal procedure – was necessary before a lawsuit may be filed. Id.

> To attorneys and judges familiar with the law in general and with ERISA law in particular, it may seem obvious that administrative remedies must come before a lawsuit, but to the average plan participant, who by virtue of being an ERISA claimant will sometimes be sick or disabled, there is nothing obvious about it. Instead, it is more likely that a layperson told that she "may" exhaust her administrative remedies and that she "may" file a lawsuit would conclude, as Watts did, that it was an either/or proposition–her option.

Id.

In the present action, however, Lytle is not arguing that she was unaware that exhaustion of administrative remedies was required before filing a lawsuit, unlike the plaintiff in Watts. Rather, Lytle argues that there is no administrative procedure set up for her or the purported ERISA class members to participate in prior to bringing a lawsuit. (Doc. # 350 at 102; Doc. # 387 at 17). Specifically, Lytle

posits that the only "administrative scheme set up for the
plan participants is when a 'claim for benefits' is denied."
(Id.). Lytle submits that she and the prospective ERISA class
are not seeking "a claim for benefits" as the Plan documents
would suggest, but rather their request at its heart is for
equitable relief, accounting, clarification, and Plan
revisions. (Doc. # 350 at ¶ 102).

A review of the relevant Plan exhibits that there is an
entire section – section 13 – devoted to Claims Procedure,
which states in pertinent part:

> All questions and claims regarding benefits under
> the Plan shall be acted upon by the Committee.
>
> Each Participant (or Beneficiary) who wishes to
> file a claim for benefits with the Committee shall
> do so in writing, addressed to the Committee or to
> Lowe's. If the claim for benefits is wholly or
> partially denied, the Committee shall notify the
> Participant (or Beneficiary) in writing of such
> denial of benefits within 90 days (or 180 days if
> special circumstances require an extension of time
> and the Participant is so notified) after the
> Committee initially received the benefit claim.

(Doc. # 362-1 at 40).

Upon consideration of Lytle's contention and the Plan
itself, this Court agrees with Defendants' position that
"despite any slight intention of seeking clarity as to future

benefits, [Lytle's] . . . claim is really one for benefits due, and that she raises this argument only to avoid complying with the administrative prerequisites to filing a claim for benefits under section 502(a)(1)(B)." (Doc. # 394 at 5). Thus, this Court finds that regardless of how Lytle characterizes her request, under Count IV, she is seeking an Order determining her benefits under the Plan (i.e. a claim for benefits). Therefore, Lytle is required to exhaust all administrative remedies available to her under the Plan before filing suit.  As Lytle admittedly did not do so, this Court grants Defendants' Motion as to Count IV. However, Count IV is dismissed without prejudice so that Lytle can re-assert Count IV at a later date once she has exhausted all administrative remedies available to her.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendants Lowe's Home Centers, Inc.; Lowe's Companies, Inc.; Lowe's HIW, Inc.; and the Administrative Committee of Lowe's Companies' Motion to Dismiss (Doc. # 362) is **GRANTED** to the extent that Counts II and III are dismissed with prejudice and Count IV is dismissed without prejudice as set forth herein.

34

(2)   Plaintiff's Amended Motion to Certify ERISA Class (Doc.

# 388) is **DENIED AS MOOT.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

<u>29th</u> day of April, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record