# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LIZETH LYTLE, Individually, and on behalf of
all other similarly situated who consent to their
inclusion in a Collective Action, et al.,

Case No.:  8:12-cv-1848-T-33TBM

       Plaintiffs,

v.

LOWE'S HOME CENTERS, INC.,

       Defendant.

_____/

## JOINT MOTION FOR ORDER APPROVING SETTLEMENT OF A COLLECTIVE ACTION, AUTHORIZING NOTICE OF SETTLEMENT TO THE PUTATIVE CLASS AND FOR ENTRY OF JUDGMENT

Plaintiff, Lizeth Lytle ("Lytle"), together with all opt-in Plaintiffs ("Plaintiffs"), and

Defendants, Lowe's Home Centers, Inc., Lowe's Companies, Inc., Lowe's HIW, Inc.,[1] and

Administrative Committee of Lowe's Corporation, Inc. (collectively "Defendants"), jointly

move this Court for entry of an order: (a) approving the terms of the Settlement Agreement;

and (b) authorizing the proposed follow-up notice to potential class members.

## I.      INTRODUCTION

Plaintiffs and Defendants (collectively, "Parties" or "Settling Parties") have

entered into a Settlement Agreement of this Collective Action, titled Settlement

---

[1] Lowe's Home Centers, Inc. (a named Defendant) was converted to Lowe's Home Centers, LLC on or about November 1, 2013.  Lowe's HIW, Inc. (another named Defendant) was merged into Lowe's Home Centers, LLC on or about December 31, 2013.

Agreement And Proposed Notice To Class Members ("Class Settlement Agreement") pursuant to which Defendants will establish a fund against which Plaintiff and others similarly situated individuals may file claims in exchange for their release of certain defined claims and the dismissal of this case with prejudice. The Parties to this Collective Action Settlement Agreement hereby jointly move this Court for entry of an order approving the terms reflected in the Settlement Agreement, authorizing the proposed notice to potential opt-in plaintiffs (those who have not already joined this lawsuit) advising them of their opportunity to participate in the settlement, dismissing the case with prejudice, and retaining jurisdiction to enforce the terms of the Settlement Agreement. The Settlement Agreement represents a fair, adequate and reasonable compromise of the claims at issue given the existence of disputed issues of fact, disputed issues of law with respect to liability, uncertainty as to whether the opt-in Plaintiffs would be deemed similarly situated; questions as to whether the Plaintiffs were exempt under the administrative exemption from the overtime requirements of the Fair Labor Standards Act ("FLSA"); the risks of whether Plaintiffs could obtain a judgment in their favor; the high expenses of continued litigation on a collective action level; and the risks of possible appeals.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

On or about August 15, 2012, Plaintiff, Lizeth Lytle, commenced a collective action complaint against the Defendants, Lowe's Home Centers, Inc., and Lowe's HIW, Inc. Later, Lowe's Companies, Inc. and the Administrative Committee of Lowe's Corporation, Inc. were added as named Defendants after Plaintiff filed additional Rule 23 class claims under

ERISA.  In this action, the Class Representative, Lizeth Lytle, alleged on behalf of herself and all other similarly situated Human Resources Managers employed with Lowe's, that Lowe's violated the FLSA by misclassifying the HR Manager position as exempt from the overtime wage provisions of the FLSA.   Many other opt-in Plaintiffs also alleged in declarations that they were similar to the Plaintiff, that they worked a mandatory overtime schedule, and that they were not paid for their wages because they were treated as salaried, exempt employees.   Eventually, the Court granted conditional class certification on January 21, 2014, and notice was sent to the putative class of HR Managers employed within the three year period of time beginning January 10, 2011, including all currently employed HR Managers.  Upwards of 880 class members filed consent notices with the Court to participate in this case.  After the notice period ended in May 2014, the parties began the process of class discovery, including the exchange of over one million documents, emails, payroll records and other materials; the selection of class representatives for discovery purposes; the depositions of class members and corporate representatives; and other actions necessary for each party to prepare their respective cases for trial.

The Parties also attended mediation in October, 2013, but were unable to consummate a settlement as the parties needed to commence additional discovery related to the class and class claims. The parties then attended mediation before Jim Brown, the Court-appointed mediator, on July 15, 2014, and continued to engage in lengthy, substantive settlement negotiations in the weeks following this mediation.  They have now reached the agreement reflected in the Settlement Agreement attached to this Joint Motion as Exhibit "1."

Defendants have denied and continue to deny any and all liability or wrongdoing of any kind with regard to any of the claims alleged, and make no concessions or admissions of liability of any sort.  Specifically, Defendants maintain that they properly classified the HR Manager position as a salaried exempt position under the FLSA for Plaintiff, all opt-in Plaintiffs, and all potential Class Members (as that term is defined in the Settlement Agreement).  Defendants also contend that for any purpose other than settlement, the action and released claims are not appropriate for collective action treatment pursuant to 29 U.S.C. §216(b).  In fact, Defendants filed numerous declarations and obtained deposition testimony that they believe show that the opt-in members (or at least many of them) performed exempt duties and are not similarly situated.   Nonetheless, Defendants have concluded that further litigation of this action would be protracted, distracting, and expensive, and that it is desirable that the action be fully and finally settled in the manner and upon the terms and conditions set forth in the Settlement Agreement on the condition that all class members are entitled to participate in the settlement. Defendants have also taken into account the cost, uncertainty, and risks inherent in any litigation, including risks relating to potential liability under the FLSA.  Defendants have therefore determined that it is desirable and beneficial to them to settle the action in the scope, manner, and upon the terms and conditions set forth in the Settlement Agreement.

The Class Representative, Lytle, on behalf of herself, the opt-in Plaintiffs and Class Members, believed and continues to believe that the claims alleged in this lawsuit have merit.  However, the Class Representative, Lytle, and the current opt-in Plaintiffs

recognize and acknowledge the expense and duration of continued proceedings necessary to prosecute their claims against Defendants through a decision on final class/collective certification, summary judgment, trial, and any appeals.  The Class Representative Lytle, on behalf of herself, the opt-in Plaintiffs and Class Members, has also taken into account the uncertain outcome and the risk of any litigation, including risks relating to potential decertification of this case as a collective action and of a possible unfavorable outcome on the merits, as well as the difficulties and delays inherent in all litigation.  Based upon her investigation and evaluation, and that of her class counsel, the Class Representative, Lytle, on behalf of herself, the opt-in Plaintiffs and Class Members, has determined that the settlement set forth in the Settlement Agreement is in the best interests of the Class Members and all opt-in Plaintiffs.

### III.    SETTLEMENT TERMS

As detailed herein and set forth in greater detail in the Settlement Agreement attached hereto as Exhibit "1" (with incorporated exhibits[2]), Defendants will be paying up to the total sum of $9,500,000.00 into a common fund settlement, part of which will be used to compensate individuals who worked as a HR Manager in any store located within the United States during the "Class Period," which is defined to run from January

---

[2] The exhibits incorporated in the Stipulation are as follows:
Exhibit A – Notice Form
Exhibit B – Consent Form
Exhibit C – [Proposed] Order Granting Approval of Collective Action Settlement
Exhibit D – [Proposed] Final Approval Order
Exhibit E – [Proposed] Final Judgment

10, 2011 through the date the Order on this Motion is entered.  Each potential Class Member who has not already opted-in to this lawsuit will be eligible to opt-in to the settlement to receive a payment based upon a pro rata allocation method.  Class Members will be sent a Notice of Settlement and Opportunity to File Consent to Join (the "Notice"), advising Class Members of the settlement and of their right to obtain their pro rata share of the settlement.  They will also receive a consent form allowing them to exercise their right to receive the settlement payment applicable to them, and releasing Defendants.  *See* Exhibits "A" and "B" to Settlement Agreement.

From the settlement fund**,** the Settling Parties have agreed that the Plaintiffs and opt-ins who joined this case prior to settlement and other potential Class Members who timely file a Consent to Join Form will be entitled to receive a payment based upon a pro rata allocation method.   The Settlement Agreement provides in Section 9(a) two examples of allocation methods.  One example apportions the part of the fund that will be shared by the Settlement Class Members (as that term is defined in Section 8(e) of the Settlement Agreement) by determining the number of qualifying weeks worked by that individual Settlement Class Member  divided by the total qualifying weeks worked by all Settlement Class Members during the Class Period.

The Parties came to an agreement to resolve the case for the entire class, and Defendants believe it is in their best interests to provide all class members the opportunity to share in this settlement.  For that reason, the Parties agreed to provide all members of the Plaintiff Class (as that term is defined) an additional thirty day period

after receipt of a new notice to opt-in to the lawsuit.  After the expiration of this brief period, the Court will be asked to dismiss the case with prejudice, and the Defendants will make the payments called for in the Settlement Agreement.

The Settlement Agreement also provides for payment of the administration costs in addition to the common fund of up to $75,000 to the third-party claims administrator of the choice of Plaintiffs' Counsel (the "Claims Administrator").  The Claims Administrator will be responsible for issuing the Notice to the potential Class Members, handling the Class Member responses, and issuing payment to Class Members who opt-in to claim their portion of the settlement fund.  Defendants will pay to Plaintiffs' Counsel directly the attorneys' fees and costs awarded by the Court.

The Parties have agreed that the named Plaintiff shall receive a service/incentive award in the amount of $7,000.00 for payment of her significant service and effort related to the investigation of this claim and in assisting and serving as primary class member and consultant in the discovery process.  Ms. Lytle spent upwards of 50 hours of her time before and throughout the litigation, attending three mediations, as well as assisting Plaintiff's counsel in discovery, investigation, and deposition preparation.[3]  Next, the parties agree that those opt-in Plaintiffs, who were part of the group that the parties agreed would provide representative testimony and be subject to discovery after conditional class

---

[3] Ms. Lytle will also enter into a general release with Defendants, which is broader than the release provided by all Class Members, and for which Defendants will pay an additional amount as set forth in Section 6(b) of the Settlement Agreement.  This amount does not impact the payment to the Class Members in any way, and is not reduced from the fund described in this Motion.

certification, and who sat for depositions, should likewise be provided with a service/incentive award of an additional $1,000.00 in addition to their pro rata share of the settlement proceeds.  The amount of the requested service awards are consistent and reasonable with awards given in class and collective actions.  *See, e.g., Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each named plaintiff); *see also Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) (approving awards of $30,000, $15,000, and $7,500 to class representatives and opt-ins); *see also Reyes v. Altamarea Grp., LLC*, 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 and $5,000).

The Settlement Agreement also compensates Plaintiff, opt-in Plaintiffs and Class Members for their attorneys' fees and costs by providing that Plaintiffs' counsel may apply to receive up to thirty-three percent (33.33%) of the maximum gross common fund ($3,166,350.00) for attorneys' fees and an additional amount of up to $100,000 for reimbursement of incurred litigation costs.  Defendants have agreed to the payment of the attorneys' fees and costs as awarded by the Court, and have agreed not to contest the fee provision up to this limit.

## IV.   MEMORANDUM OF LAW

### A.   The Court Should Approve the Parties' Settlement Because It Represents a Fair and Reasonable Compromise of Disputed Claims

#### 1.   The Settlement Meets the Requirements Set Forth in *Lynn's Food Stores, Inc.*

As the Eleventh Circuit explained in *Lynn's Food Stores, Inc. v. United States*, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982). Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context." *Id.* at 1354. This is because the employees are "likely represented by an attorney who can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as coverage or computation of back wages that are actually in dispute; [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *15. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See id.; see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues,

the settlement should be approved. *Id.* at 1354; *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *16; *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *13.

After scrutinizing the settlement, this Court will find that the Stipulation is fair and should be approved.  The Settlement Agreement resolves a *bona fide* dispute between the Parties with respect to whether the employees at issue are entitled to overtime wages under the FLSA for their overtime hours worked during the relevant class period, during which all the members of the class were treated as exempt under the administrative exemption in the FLSA.  Further, this agreement resolves the bona fide dispute over the amount of hours worked per person and the calculation of the regular rate and overtime rates of pay for any hours such class member may be entitled to.  In proving such claims, Plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed to trial.  First, Plaintiffs would face a risk at trial of not prevailing on their wage claims because they worked in Human Resources, and were involved with the interviewing and selection of candidates for all employees at the store level, and were in a position to exercise discretion in parts of their job duties.  At trial, Defendants would have claimed, among other arguments, that (i) the hiring process used by Lowe's satisfied the standards of the administrative exemption and that the primary job duty of the HR Manager involved the exercise of discretion and independent judgment, which the Plaintiffs contend otherwise.  The jury would have been faced with the difficult task of determining the primary job duty of a position that the parties agree involves upwards of 20 different job duties and roles and a dispute between the parties concerning what an HR

Manager's primary job duty actually was. Moreover, if the case were tried, the jury would have been presented with a very complex case where some employees apparently worked contrary to standard procedures, and will claim to have spent substantial amount of their work hours involved with many routine and repetitive, typical non-exempt job duties, while spending unknown percentages of time engaged in the alleged primary job duties. Plaintiffs would bear the burden of presenting evidence of hours worked beyond the schedules and Defendants would bear the burden of proving the administrative exemption. Moreover, the parties each obtained experts disputing their opponents' respective position, underscoring the complexities and in-depth factual dispute in this case. The complex clear factual nature of this dispute under the FLSA would have required a jury to answer key questions of fact, including: a) what is the primary job duty of the HR Manager, b) does the primary duty involve the exercise of discretion and independent judgment, and c) the amount of time spent performing the primary job duty. The parties agreed to a group of 50 class members to serve as representatives for discovery purposes, including depositions around the country, as well as upwards of 30 or more other fact witness depositions. The parties planned to depose the 50 representatives (and in fact already deposed some), as well as exchanging broad written discovery with respect to this group. Further, the parties would have had to depose and attend four expert depositions and the depositions of numerous other fact witnesses, such that the costs for court reporters and experts alone could be upwards of $150,000 or more for each side. Given the possibility or likelihood that ultimately a jury would decide this

case, the disputed facts, the competing expert opinions, and the costs and risks of going to trial, the parties recognized it was in their mutual best interest to settle this dispute.

The parties determined that the most equitable means to determining the share of the settlement proceeds for the class members who opt in is to base it on an equitable pro rata determination, such as the number of work weeks per each class member in the relevant class period as a percentage of the total class who ultimately opt in.  Defendants likewise agree to fund a common fund up to a maximum possible amount of $9,500,000.00 based upon a reasonable per person cost basis of approximately $3,166.67 per person, two-thirds of which per person amount will be used to determine the payments to the Class Members who opt-in (as more fully explained in Section 9(a) of the Settlement Agreement).

If the case is tried, Defendants face the risk of disputing allegations of class members who contend they worked between 50 and 60 hours per week on average. Defendants would also have to show that they had a good faith basis for classifying the HR Manager position as exempt.

Finally, Defendants vigorously opposed collective certification and have argued throughout the case that the HR Managers are not similarly situated, including filing numerous declarations that ultimately would be reviewed by the court when deciding the motion for decertification of the collective action.  If Defendants' motion to decertify the class were successful, each individual plaintiff would be faced with proceeding alone in a lawsuit, as to which most opt-ins would likely decline; conversely, Defendants could be

faced with litigation costs of upwards of $100,000 per each of the opt-in Plaintiffs who file individual lawsuits.  Further, if Defendants were successful in proving the administrative exemption at trial, Plaintiffs would not receive any compensation at all, and the class counsel likewise would have spent an estimated $300,000 in litigation costs. Lytle further considered that the Federal Courts have very limited published opinions even addressing Human Resources department employees and the exemptions, creating even greater uncertainty about her claims.  Given the FLSA and supporting regulations expressly set forth that performing human resources duties are related to management, it's understandable why very few if any cases in published opinions or otherwise involve a class case of human resources employees.  Further, given the amount of damages for the class at issue, Defendants would have had to both try this case and appeal any decision or judgment for the Plaintiffs such that the case ultimately could reasonably take many more years to resolve, especially if it were remanded.  Plaintiffs' counsel estimated that the damages for a reasonable percentage of opt ins of 60% of the class using the fluctuating workweek method were in the range of $12,500,000 to $14,945,000 for the class for 104 weeks based upon the scheduled overtime hours, not including liquidated damages.

Of course, if Defendants were successful in proving their defenses and affirmative defenses, the result could be no recovery at all for the Class. The Settling Parties ultimately settled on a maximum sum of $9.5 million dollars as a fair, adequate, and reasonable settlement after carefully weighing the risks, extensive comprehensive

damage models prepared by Plaintiff's counsel, the merits of each parties' claims and defenses, examining the facts (including the numerous depositions taken), the declarations, the competing expert opinions, the anticipated future costs and fees to be incurred, and most importantly, the mutual desire by both Plaintiff and the Defendants to end this litigation at this time because of the costs and time required by each side related to the litigation ahead.  In addition, Plaintiffs' counsel took into account the uncertainty of the class being decertified, yet having to engage in months of depositions and discovery involving upwards of 75 witnesses, expert testimony, and millions of documents and emails to review.  Lytle, along with her class counsel, weighed the risks factors and ultimately agreed that is was in the best interests of the class to resolve this dispute at this juncture for the sums agreed upon.

In sum, Plaintiffs and Class Members face factual and legal issues in litigation and at trial that make the likelihood of success at trial uncertain. Many Plaintiffs as well will move, and become unavailable, as has happened, some even withdrawing, such that the risks inherent in this case strongly support settlement at this stage of litigation.

Furthermore, the Plaintiffs and the putative class were represented by counsel experienced in FLSA matters: Mitchell Feldman, Esq. and Dale Morgado, Esq., the two founding and primary shareholders/partners of Feldman Morgado, PA, who in the "adversarial context of a lawsuit," negotiated for the Plaintiffs and Class Members a "reasonable compromise of disputed issues." *See id.* at 1354.  Based on the extensive modeling and damages analysis prepared by Plaintiffs' counsel, who are experienced in

handling FLSA class cases, Plaintiffs' counsel recommended to Lytle that the settlement was fair, adequate, and reasonable and, herein, together with Lytle, jointly recommend approval of this class settlement agreement. *See* attached Affidavit of Lytle (Exhibit 2).

Since employees must opt into the case to participate in the settlement, there is no need to provide collective action members with preliminary notice of the suit followed by an opportunity to object. Instead, the approval may be sought on a single motion to enter a stipulated judgment. *Id.* at 1353. When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Lynn's Food Stores*, 679 F.2d at 1353.

**B.     The Settlement Was The Result of Arm's Length Negotiations Free From Collusion**

The Agreement was the result of a hard-fought adversarial, arm's length negotiations that have taken place after about two years full years of litigation. In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Pickett v. IBP*, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001).

**1.     Settlement was Arm's-Length.**

Here the settlement was negotiated at arm's-length by experienced counsel, free from fraud or collusion. "A 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Matheson v. T-Bone Rest., LLC*, 2011

U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). The Parties were able to settle this action only after they engaged in a vigorous and comprehensive vetting and mediation of the wage practices at issue in this matter. *Diaz v. Hillsborough County Hos. Authority,* 2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (*quoting Cotton*, 559 F.2d at 1330) (Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel"). The extensive litigation activities, including the motion for conditional certification, show the adversarial nature of this litigation and settlement. Moreover, the parties attended depositions of store managers, numerous plaintiffs, as well as several of Defendants' 30(b)(6) corporate representatives. The parties each secured two experts and served each other with opinions that were in dispute. The parties exchanged requests for production of documents and ESI resulting in over one million documents being exchanged, with potentially millions more to be exchanged absent settlement. Further, Plaintiff amended the complaint several times and was hopeful to further amend to add back in the ERISA Rule 23 class claims after satisfaction of procedural prerequisites, such as the exhaustion of administrative remedies. Therefore, the Court should find that the settlement was the result of arm's-length bargaining.

Based upon their extensive experience in wage and hour collective and class actions (including *Espanol v. Avis; Geronkdikis et al v. Bar Louie; Barends v. Circle K; Chartrand v. Coordinated Benefits; Czopek v. Tire Kingdom*, to name a few), Plaintiffs'

Counsel believe that on inspection this Court will join them in concluding that the proposed settlement and Stipulation is fair, reasonable and worthy of approval.  It bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiffs and Class Members were represented by experienced counsel, who, in the "adversarial context of a lawsuit" engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute with respect to coverage [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See Lynn's Foods,* 679 F.2d at 1353-54.

### 2.      Distribution Will Be Equitable.

Distributions from the settlement fund will be equitable and based upon Lowe's personnel and time records data with the same formula applied to all Class Members. Each Class Member who timely files a Consent to Join Form will receive a pro-rata share of the settlement fund based upon analysis of their actual weeks worked for Lowe's during the relevant class period.  After ascertaining the number of Settlement Class members, Class Counsel will provide a pro-rata share of the total Final Distribution Amount, as that term is defined and explained in Section 9(a) of the Settlement Agreement, by allocating the funds either by comparing the Settlement Class member's w-2 earning for the total class period compared to the total compensation paid to all Settlement Class members during the Class period, or alternatively, comparing the work weeks worked by each Settling Class Member to the total work weeks worked by all Settling Class Members.    Under this approach, each Settlement Class member would be

paid a pro rata share of the Final Distribution Amount (as defined in Section 9(a)) according to the number of work weeks he or she worked.

3.       **Modest Service Payments Are Appropriate for the Named Plaintiff and Opt-In Plaintiffs Who Served as Nominated Class Representatives for Discovery.**

Under the terms of the proposed Settlement in Section 6(b), the named Plaintiff and the opt-In Plaintiffs who served as nominated class representatives for discovery by providing depositions will benefit from the receipt of modest service payments.  To recognize these plaintiffs, whose time and dedication participating in the investigation, discovery, and mediation which make settlement possible, service payments are not unusual. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Hosier v. Mattress Firm, Inc.,* 2012 U.S. Dist. LEXIS 94958, 14-15 (M.D. Fla. June 8, 2012), citing *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); see *Su v. Elec. Arts, Inc.,* No. 6:05-cv-131-Orl-28JGG, 2006 U.S. Dist. LEXIS 98894, 2006 WL 4792780, at *1, 2 (M.D. Fla. Aug. 29, 2006) (unpublished Report and Recommendation), adopted, 2006 U.S. Dist. LEXIS 67274, 2007 WL 2780899 (M.D. Fla. Sept. 20, 2006) (unpublished); see also *Sheppard v. Consol. Edison Co. of N.Y., Inc.,* No. 94-CV-0403(JG), 2002 U.S. Dist. LEXIS 16314, 2002 WL 2003206, at *6 (E.D.N.Y. Aug. 1, 2002) (unpublished) (collecting cases). "Such awards are justified when the class representatives expend   considerable   time and   effort   on   the   case,   especially

18

by advising counsel, or when the representatives risk retaliation as a result of their participation." *Ingram*, 200 F.R.D. at 694. *See also, In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)) (approving $303,000 payment to each class representative plaintiff in employment case where class members on average received $38,000).[4]

In the present case, the named Plaintiff spent a significant amount of time and effort prosecuting the case, assisting class counsel, attending conferences and meetings, and in analyzing all the discovery records.  Ms. Lytle spent over 2.5 years working with Class Counsel on this case and serving as the Class Representative for a class of approximately 3,000 employees.  Additionally, the parties agreed upon and selected 50 class members to serve as representatives for discovery, and those who ultimately sat for depositions who are identified in Section 6(a), had to devote additional time and effort in preparing and attending a deposition.   Moreover, the incentive awards are very modest, and thus the incentive awards reflected in Section 6(b) of the Settlement Agreement and agreed to by Defendants, should be approved.

---

[4] District courts in the Eleventh Circuit routinely approve settlements granting named plaintiffs additional relief. *See, e.g., Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. LEXIS 109357 (M.D. Fla. July 25, 2008); *Shores v. Publix Super Markets, Inc.*, No. 95-1162-CIV-T-25E, Consent Decree, Dkt. 319, at 90-91 (M.D. Fla. May 23, 1997) (named plaintiffs provided additional compensation for signing a full-release of claims, for time spent in depositions, for risk of litigation, and for spending substantial time and effort); *Haynes v. Shoney's, Inc.*, 1993 U.S. Dist. LEXIS 749, *23, *137 (N.D. Fla. January 25, 1993) (approving as fair, adequate and reasonable a settlement that afforded each named plaintiff $ 100,000, while class members were required to file claim forms and provided a *pro rata* share of the remaining funds).

4.      **The Notice of Settlement and Consent to Join and Release Should Be Approved.**

To facilitate this settlement this Court should authorize the Parties to mail notice of this Settlement to provide the potential Class Members who have not already opted-in the opportunity to participate through the distribution of opt-in forms under section 216(b). *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989); *Dybach v. State of Fla.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. LEXIS 109357 (M.D. Fla. July 25, 2008). The notice procedures provided under Section 216(b) permit potential plaintiffs to participate in the settlement by filing consent to join form, while providing that those who do not elect to do so will not be bound to the outcome of the case. The Parties agree that the proposed Notice of Settlement and Consent to Join and Release Form contained in Exhibit A of the Stipulation fairly and clearly inform Potential Opt-In Plaintiffs of their legal options with respect to participating, or not, in the settlement of this litigation.

## V.      CONCLUSION

In sum, the Parties submit the Settlement Agreement as a fair and reasonable resolution of the disputed issues and that its entry will ensure to "secure the just, speedy, and inexpensive determination" of this action. Fed.R.Civ.P. Rule 1. Accordingly, the Parties urge this Court to grant the Proposed Order Approving Stipulation (Stipulation Exhibit D to the Settlement Agreement) and enter an order authorizing notice to Class Members of their opportunity to participate in the benefits of this settlement (Exhibit A to the Settlement Agreement).

Dated this 22nd day of August, 2014

Respectfully Submitted,

*/s/ Mitchell L. Feldman, Esq.*
Mitchell L. Feldman, Esq.
FL Bar No:  0080349
Feldman Morgado PA
501 North Reo Street
Tampa FL 33609
(t) 855-433-6529
(p) 813-639-9366
(f) 813-639-9376
Email: mfeldman@ffmlawgroup.com

Lead Plaintiffs' Class Counsel


*/s/ Juan C. Enjamio*
Juan Enjamio, Esq.
FL Bar No:  571910
Hunton & Williams LLP
Sabadell Financial Center
1111 Brickell Ave, Suite 2500
Miami, FL 33131
Direct: 305.810.2511
Fax: 305.810.1613
Miami, Fl 33609
(t) 855-433-6529
Email:jenjamio@hunton.com

Trial Counsel and Attorneys for the
Defendants

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was served via E-mail to Juan C. Enjamio, Esq, HUNTON & WILLIAMS, LLP, (E-mail: jenjamio@hunton.com) on this 22nd day of August 2014.

*Mitchell L. Feldman*
MITCHELL L. FELDMAN
Florida Bar No. 0080349

22